IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff-Respondent,

     v.                              NO. 15-CV-281-KG/GBW
                                                    14-CR-660-KG

ENDI MUNOZ-CHAVEZ,

       Defendant-Petitioner.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before me on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody.  *Doc. 1*.[1]  Upon review of the Motion and the United States' Response (*doc. 11*), I conclude that there is no need for an evidentiary hearing and recommend denial of the Motion.

I.    BACKGROUND

    A.    **The Underlying Criminal Case**

On December 26, 2013, Petitioner was arrested on a criminal complaint charging him with Reentry of a Removed Alien, in violation of 8 U.S.C. §§ 1326(a) and (b).  *Cr. Doc. 1*.  He was appointed counsel, at no cost to him, who represented him at all proceedings.  *See Cr. Doc. 2, 6*.  On March 5, 2014, Petitioner pled guilty to an Information charging the same crime before United States Magistrate Judge Lourdes

---

[1] Citations to "*Doc.*" refer to docket numbers filed in Case No. 15-CV-281-KG/GBW.   Citations to "*Cr. Doc.*" refer to the attendant criminal docket, Case No. 14-CR-660-KG.   For filings made on both dockets, only the civil docket number is given.

Martinez.   *Cr. Docs. 9-14.*   He pled with the benefit of a plea agreement pursuant to

Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.   *Cr. Docs. 13, 14.*

Within the plea agreement, the parties stipulated that Petitioner's Base Offense

Level would be Level 8 plus the sentencing guideline adjustment for his most serious

prior criminal conviction as determined by the sentencing court.   *Cr. Doc. 13* at 3.[2]   The

agreement further stated that the Final Adjusted Offense Level would be the Base

Offense Level minus a downward adjustment for acceptance of responsibility and a

four-level downward departure pursuant to U.S.S.G. § 5K3.1.   *Id.*   Finally, the "parties

agree[d], pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), to a sentence

within the resulting guideline range . . . ."   *Id.*   Separately, Petitioner "agree[d] not to

seek any further reduction, departure, deviation, or variance in the Final Adjusted

Offense Level or the Criminal History Category as determined by the Court, through

motion or by argument at sentencing pursuant to 18 U.S.C. § 3553(a), *United States v.

Booker*, 543 U.S. 220 (2005), or otherwise."   *Id.* at 5.

Petitioner "specifically under[stood] that the maximum statutory penalty" for this

offense is, *inter alia*, "imprisonment for a period of not more than twenty years."   *Id.*

Moreover, he expressly agreed that "[t]here have been no representations or promises

from anyone as to what sentence the Court will impose."   *Id.* at 6.   Further, he

---

[2] At all proceedings, Petitioner spoke with the Court with the assistance of a Spanish interpreter.   While
the plea agreement was written in English, he averred under oath that the agreement was read to him in
Spanish prior to entering his plea.   *Doc. 9*, Ex. 2 at 10.

"knowingly waiv[ed] the right to appeal this conviction and any sentence, including any

fine, at or under the maximum statutory penalty authorized by law" and "agree[d] to

waive any collateral attack to this conviction and the sentence imposed, including any

fine, pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the

issue of counsel's ineffective assistance in negotiating or entering this plea or this

waiver." *Id*. at 6.

At the plea hearing, Petitioner was represented by defense counsel, Mr.

Pierce-Varela.   In the Court's colloquy with Petitioner, the Court determined that he

entered into the plea agreement knowingly and voluntarily without being forced and

without any additional promises outside the scope of the plea agreement. *Doc. 9*, Ex. 2,

8-11.   The Court asked Mr. Pierce-Varela to present the important provisions of the plea

agreement and to explain why the plea agreement was in his client's best interest.   *Id*. at

11.   Mr. Pierce-Varela stated that the offense adjustment levels set forth in the plea

agreement calculated at a "worst-case scenario would be a level 19, criminal history

category IV, resulting in 46 to 57 months," which would be significantly less than the

maximum penalty under law, and that, in exchange for this variance, Petitioner

"agree[d] not to seek any further variance after that has been calculated . . . [and]

agree[d] to waive all his appellate rights except as to the issue of ineffective assistance of

counsel in negotiating or entering into the plea agreement."   *Id*. at 11.   The Court asked

Petitioner if he understood that "level 19, category IV, 46 to 57 months is only [Mr.

Pierce-Varela's] estimate of the worst-case scenario, . . . it could be higher or it could be lower."   *Id.* at 13.   Petitioner responded that he did.   Id.

The United States Probation Office calculated the Base Offense Level at 8.   PSR ¶10.[3]   The Base Offense Level was increased by 16 levels to an Adjusted Offense Level of 24 because Petitioner was previously deported after being convicted of a felony "crime of violence," to wit: Domestic Abuse by Strangulation.   PSR ¶¶ 11, 15.   After a three-level reduction for acceptance of responsibility, the Total Offense Level was 21. PSR ¶¶ 17, 18.   Pursuant to the agreed application of U.S.S.G. § 5K3.1, the offense level was reduced further by four levels resulting in a Total Offense Level of 17.   PSR ¶ 19.[4] Petitioner's total criminal history score was 11, establishing a Criminal History Category of IV.   PSR ¶ 30.   Based on a Total Offense Level of 17 and Criminal History Category of IV, the Guideline range was 46 to 57 months imprisonment. PSR ¶ 54.

At his sentencing hearing on May 21, 2014, Petitioner was again represented by Mr. Pierce-Varela.   On Petitioner's behalf, counsel presented no objections to the PSR and requested a sentence at the low end of the 46 to 57 month guideline range.   *Doc. 9*, Ex. 3 at 4.   The Honorable Nancy D. Freudenthal then sentenced Petitioner to 46 months

---

[3] Citations to "PSR ¶___" refer to the presentence report prepared in Defendant's criminal case.

[4] It should be noted that the Defendant may not have truly qualified for the four-level reduction pursuant to U.S.S.G. § 5K3.1 under the agreement.   The agreement provided that the defendant would receive only a two-level downward departure under U.S.S.G. § 5K3.1 if he "has a prior conviction for a serious violent offense . . . ."   *Cr. Doc. 13* at 4.   The conviction for domestic abuse by strangulation may have qualified as a "serious violent offense" under the terms of the agreement.   *Id.*   Nonetheless, without objection from the government, Defendant was given the benefit of the full four-level reduction pursuant to U.S.S.G. § 5K3.1.

imprisonment.   *Id*. at 5-6.

**B.    The Instant Petition**

On March 30, 2014, Petitioner filed a Motion to Vacate, Set Aside, or Correct a

Sentence by a Person in Federal Custody under 28 U.S.C. § 2255.   *Doc. 1*.   While he

divides his claims into two categories, the Court divines the following three separate

claims: (1) his attorney was ineffective because he failed to file a notice of appeal as

directed by Defendant; (2) his attorney was ineffective for failing to object to the 16

offense level enhancement; and (3) his attorney was ineffective because he induced

Defendant to plead guilty with a promise of a sentence of no more than 16 months.   *Doc.*

*1* at 4-5.

**II.    ANALYSIS**

**A.    Petitioner Waived His Right to Collaterally Attack Counsel's Failure to
        Appeal and Counsel's Performance at Sentencing**

In his plea agreement, Petitioner waived "his right to appeal this conviction and

any sentence . . . at or under the maximum statutory penalty authorized by law.   In

addition, [he agreed] to waive any collateral attack to this conviction and the sentence

imposed, including any fine, pursuant to 28 U.S.C. §§ 2241, 2255, or any other

extraordinary writ, except on the issue of counsel's ineffective assistance in negotiating

or entering this plea or this waiver."   *Cr. Doc. 13* at 6.   At his plea hearing, Petitioner

testified under oath that he "fully and completely underst[oo]d each and every

provision of [his] plea agreement." *Doc. 9*, Ex. 2 at 10-11.   Moreover, Petitioner agreed

with his attorney's summary of the plea agreement which included the recognition that

he "agrees to waive all his appellate rights except as to the issue of ineffective assistance

of counsel in negotiating or entering into the plea agreement."   *Id*. at 11-12.

A plea agreement waiver of post-conviction rights is "generally enforceable

where the waiver is expressly stated in the plea agreement and where both the plea and

the waiver were knowingly and voluntarily made."   *United States v. Cockerham*, 237 F.3d

1179, 1183 (10th Cir.2001).   Exceptions to the general rule include "where the agreement

was involuntary or unknowing, where the court relied on an impermissible factor such

as race, or where the agreement is otherwise unlawful."   *Id*. at 1182.   Moreover, "a plea

agreement waiver of postconviction rights does not waive the right to bring a § 2255

petition based on ineffective assistance of counsel claims challenging the validity of the

plea or the waiver.   [However, c]ollateral attacks based on ineffective assistance of

counsel claims that are characterized as falling outside that category are waivable."   *Id*.

at 1187.

Nowhere in his Petition does Petitioner argue, nor does the record support, that

his waiver of his rights to collaterally attack his conviction and sentence was not

knowingly and voluntarily made.   He also does not argue, nor does the record support,

that the waiver or its enforcement is based on some impermissible factor or is otherwise

unlawful.   As such, the waiver is enforceable if, as here, the government seeks to

enforce it.   *See Cockerham*, 237 F.3d at 1183; *see doc. 9* at 7-16.

Of course, a challenge to counsel's effectiveness regarding negotiation or entering

the plea or waiver is not waivable.   *Id.* at 1183-87.   But neither of Defendant's first two

claims – counsel's failure to object to enhancement at sentencing and counsel's failure to

file a notice of appeal – fall into the non-waivable categories because they are not

challenges to the validity of the plea or the waiver.   *See id.* at 1187-88 (claim based on

counsel's performance at sentencing hearing falls within categories of collateral attack

which are waivable); *see United States v. Falcon-Sanchez*, 416 F. App'x 728, 729-31 (10th

Cir. 2011) (claim based on counsel's failure to file notice of appeal despite direction of

client falls within category of collateral attack which are waivable).

Petitioner has waived his right to collaterally attack the failure of counsel to file a

notice of appeal and counsel's allegedly deficient performance at sentencing.   Thus, I

recommend rejecting his first and second claims.

### B.   Petitioner's Allegations about Defense Counsel's Supposed Inducement to Plead Guilty Do Not Raise a Substantial Issue of Fact

As his final claim, Petitioner asserts, "[C]ounsel induced me to plea guilty by

stating to me that I would receive a sentence of 16 months at the most."   *Doc. 1* at 5.

Because this claim attacks the validity of the plea, it, unlike the two claims discussed

above, is not subject to waiver.   *See Cockerham*, 237 F.3d at 1187.   Nevertheless, this

claim is directly contradicted by record.

First, the claimed promise of a sixteen (or less) month sentence is contrary to the terms of the plea agreement.   In the agreement, Petitioner explicitly agreed that the sentence will be within the range determined by the application of the Sentencing Guidelines after he received the reductions for acceptance of responsibility and the fast-track program.   *See Cr. Doc. 13* at 3.   Moreover, the agreement expressly provided that Petitioner "agree[d] not to seek any further reduction, departure, deviation, or variance in the Final Adjusted Offense Level or the Criminal History Category as determined by the Court, through motion or by argument at sentencing pursuant to 18 U.S.C. § 3553(a), *United States v. Booker*, 543 U.S. 220 (2005), or otherwise."   *Id*. at 5. Finally, the agreement clearly states that "[t]here have been no representations or promises from anyone as to what sentence the Court will impose."   *Id*. at 6.   Not only did Petitioner sign the plea agreement with these clear provisions, but, at his plea hearing, he testified under oath that he "fully and completely underst[oo]d each and every provision of [his] plea agreement."   *Doc. 9*, Ex. 2 at 10-11.

Second, and perhaps more importantly, the plea colloquy directly refutes Petitioner's claims of a promised sixteen-month sentence.   Early in the colloquy, the Court made clear the lack of certainty regarding Petitioner's sentence.   The Court asked, "Do you understand that it's not up to your attorney or up to me to sentence you, it's up to your sentencing judge? And it is possible for your sentencing judge and your sentencing judge has the authority to sentence you all the way up to the statutory

8

maximum, 20 years.   But your sentencing judge may sentence you more harshly or severely than your attorney thinks you're going to get right now.   Do you understand?" *Id*. at 9-10.   Petitioner swore that he understood.   *Id*. at 10.   The Court persisted and asked, "Knowing that your sentencing judge could give you a harsher sentence than your attorney thinks you're going to get right now, do you still want to proceed with your guilty plea?"   *Id*.   Petitioner said that he did want to continue.   *Id*.   Later in the colloquy, Petitioner's counsel made clear that "there are a lot of unanswered questions . . . in terms of his final offense level."   *Id*. at 12.   In fact, the only estimate expressed by counsel was a "worst-case scenario . . . resulting in 46 to 57 months."   *Id*. at 11-12.   The Court followed up on the statements by counsel asking, "Do you understand that with -- because of your criminal history -- you're receiving benefits but it's very difficult for your attorney at this time to know exactly what reductions you're going to receive because of that history?"   *Id*. at 12.   Petitioner said he understood.   *Id*. at 12.   The Court continued asking directly, "Do you understand that what he has described . . . 46-to 57 months, is only his estimate of the worst-case scenario? But it could be higher or it could be lower.   Do you understand?"   *Id*. at 13.   Petitioner said he understood.   *Id*.

The self-serving allegations in his Petition about a supposed sixteen-month sentence promise are nothing more than "mere denials of that which he has previously admitted, [and] do[] not raise a substantial issue of fact within the meaning of § 2255. Although an allegation of fact must ordinarily be accepted as true, it is not required

where . . . the allegation is contradicted by the files and records before the court." *Runge v. United States*, 427 F.2d 122, 126 (10th Cir. 1970).  Based on the explicit terms of the plea agreement and the extensive plea colloquy, it is clear that Petitioner, prior to entering his plea, understood he had no guarantee to any particular sentence – let alone a sixteen-month sentence.  *See United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir. 1988) ("A defendant's statements at a plea hearing should be regarded as conclusive . . . in the absence of a believable, valid reason justifying departure from the apparent truth of those statements." (internal quotation omitted)).  Petitioner's ineffective assistance of counsel claim in this regard therefore fails because he cannot demonstrate either prejudice or unreasonable conduct on the part of counsel.

## III.  CONCLUSION

Having reviewed the matter, I conclude that each of Petitioner's claims lacks merit or is subject to waiver.  Therefore, I recommend denial of each claim and dismissal of the Petition with prejudice.

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**